# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**ASSEMBLED ELECTRONIC
OPTIMIZED SOLUTIONS,**
a New Mexico sole proprietorship

    Plaintiff,

v.                                                                                                    No. CIV 99-00834 BB/KBM

**MANNCORP, INC.,**
a Pennsylvania corporation,

    Defendant.

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant Manncorp, Inc.'s motion for leave to file and serve third party complaints against David Jones d/b/a Circuits Plus and Avanti Circuits, Inc. (See Doc. 64, filed July 10, 2001.) The Court has examined the parties' submissions and the relevant legal authorities, and, for the reasons set forth below, finds that Defendant's motion should be DENIED.

## I.
## FACTUAL BACKGROUND

Plaintiff Assembled Electronic Optimized Solutions ("Buyer"), a New Mexico sole proprietorship, commenced this suit against Defendant Manncorp., Inc. ("Seller"), a Pennsylvania corporation with its primary place of business in Pennsylvania, in the First Judicial District Court, County of Santa Fe, State of New Mexico. Seller removed this action to the United States District Court for the District of New Mexico pursuant to 28 U.S.C. § 1441. (See Doc. 1, filed July 28, 1999.) This Court has subject matter jurisdiction of this suit pursuant to 28 U.S.C. § 1332(a),

because it is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

Buyer purchased from Seller a piece of equipment known as the Microplacer MP-480 ("Microplacer"). (See Seller's proposed third party complaint at 3, ¶ 13.) The Microplacer locates and places electronic components on pre-printed circuit boards. The process of locating and placing such components is generically referred to as "assembling."

Buyer purportedly used the Microplacer for several projects, including a complex robotic control device project developed by Dr. Mark W. Tilden, who is a robobiologist at Los Alamos National Laboratories ("LANL"). In furtherance of his project and at his request, LANL entered into a contract with Circuits Plus ("Designer"), a New Mexico sole proprietorship, in which Designer agreed to arrange for the design, manufacture and assembly of the boards. Pursuant to that contract, Designer designed the circuit boards, and it sub-contracted the manufacturing work to Avanti Circuits, Inc. ("Manufacturer"), an Arizona corporation with its primary place of business in Arizona, and the assembly work to Buyer.

Based on Dr. Tilden's specifications, Designer designed the boards and Manufacturer manufactured the boards. The original circuit boards ("First Generation Boards") were allegedly designed defectively, because Designer made the circuit boards: (1) too thin, resulting in "curling" of the boards in the reflow oven; and (2) based upon European chip spacings rather than the smaller American chip spacings, causing the components not to fit. (See Seller's reply brief at 3.) The First Generation Boards also were allegedly manufactured defectively, because Manufacturer contaminated the gold plating on the solder joints of the circuit boards, resulting in the circuit boards being unable to accept electronic components. (See id. at 4-5.)

The design and manufacturing flaws in the First Generation Boards were noted by Buyer in what is known as the "profiling stage." (See Affidavit of Gregory E. Romero, attached to Buyer's response brief as Exhibit A, at 2-3, ¶ 6.) During that stage, which precedes the assembly stage, Buyer and Dr. Tilden discussed various ways in which to correct the flaws in the original circuit boards. In fact, the design and manufacturing flaws in the First Generation Boards were eventually corrected by re-design and re-manufacture, rather than by re-work.

In the course of assembling the corrected circuit boards, not the boards profiled by Buyer, the Microplacer allegedly malfunctioned. (See id. at 3-4, ¶ 7.) The malfunctioning of the Microplacer allegedly forced Buyer to re-work the corrected boards. Buyer seeks as damages the expenses allegedly associated with re-working the corrected boards. (See Buyer's response brief at 9-10.) Seller claims that included within Buyer's request for damages is the cost of profiling and/or re-working the flawed boards. (See Seller's reply brief at 3-4.)

## II.
## DISCUSSION

The issue is whether Seller may implead Designer and Manufacturer, where Seller claims they are solely responsible for some or all of the damages sustained by Buyer. A defendant, as a third-party plaintiff, may implead "a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." FED.R.CIV.P. 14(a). The third-party plaintiff must allege facts sufficient to establish the derivative or secondary liability of the third-party defendant. See Hefley v. Textron, Inc., 713 F.2d 1487, 1498 (10th Cir. 1983) ("[I]mpleader is proper only where the third-party defendant's liability is in some way derivative of the outcome of the main claim."); Pitcavage v. Mastercraft Boat Co., 632 F.Supp. 842,

3

845 (M.D.Penn. 1985) ("Rule 14(a) is procedural and does not create any right to seek indemnification or contribution."). Thus, it is impermissible under Rule 14 to implead a third-party defendant claimed to be solely liable to the plaintiff. See Millard v. Municipal Sewer Authority of Lower Makefield Tp., 442 F.2d 539, 541 (3rd Cir. 1971); Clark v. Associates Commercial Corp., 149 F.R.D. 629, 634 (D.Kan. 1993).

In Parr v. Great Lakes Express Co., the district court dismissed a third-party complaint in which the third-party plaintiff claimed *inter alia* that the third-party defendant's alleged acts of negligence were the sole and proximate cause of the plaintiff's damages. 484 F.2d 767, 769 (7th Cir. 1973). On appeal, the Seventh Circuit affirmed the district court's dismissal on that issue, stating in relevant part:

> We do not understand the purpose of this count. If the accident was solely and proximately caused by someone else's negligence this would seem to be a complete defense to the original action and would not seem to be the basis of a third-party action, which presupposes liability on the part of the original defendant which he is attempting to pass on to the third-party defendant.

Id.

Like the third-party plaintiff in Parr, Seller claims the third-party defendants are completely responsible for the plaintiff's alleged damages. In particular, Seller claims the First Generation Boards were negligently designed and manufactured. According to Seller, the flaws in the First Generation Boards, and not the alleged malfunctioning of the Microplacer, caused Buyer to re-work those circuit boards. Seller claims that Designer and Manufacturer are solely responsible for the damages incurred by Buyer in correcting the flawed boards and that Buyer is inappropriately seeking those damages from Seller in its complaint. That being the case, Seller has failed to make a proper third-party complaint against Designer and Manufacturer. See id.; Timmons v. Ford Motor Co., 949

F.Supp. 859, 860 (S.D.Ga. 1996); Lopez de Robinson v. U.S., 162 F.R.D. 256, 257 (D.P.R. 1995); Bike v. American Motors Corporation, 101 F.R.D. 77, 78 (E.D.Penn. 1984).

The fact that Seller claims it will have an action for indemnity or contribution against Designer and Manufacturer if it is held liable for their conduct does nothing to change the above result. Seller fails to suggest how it could possibly be held liable for Designer's and Manufacturer's alleged negligence. Nor is there such a possibility. Seller has no contract with Designer and Manufacturer, so there is no contractual indemnity issue. See Yelin v. Carvel Corporation, 119 N.M. 554, 556, 893 P.2d 450, 452 (1995) ("Traditional indemnification is based on an independent, preexisting legal relationship, and the right to indemnification typically arises from an express or implied contract."). Moreover, New Mexico has adopted a pure comparative negligence system, meaning that contribution, indemnity, and joint and several liability are figments of the past in cases such as this. See Scott v. Rizzo, 96 N.M. 682, 688, 634 P.2d 1234, 1240 (1981) (adopting the comparative fault doctrine); Bartlett v. New Mexico Welding Supply, Inc., 98 N.M. 152, 646 P.2d 579 (Ct. App. 1982) (ruling that joint and several liability among concurrent tortfeasors is inappropriate in a pure comparative negligence system which stresses apportionment of liability on the basis of fault). Therefore, even if Seller claimed it was only partially at fault for Buyer's alleged damages, Seller cannot be required to pay more than its fair share of the damages. Thus, there is no basis upon which Designer and Manufacturer would be liable secondarily to Seller in the event that Seller is held liable to Buyer.

It would also be improper for Seller to implead Designer and Manufacturer for the purposes of discovery and assessment of comparative fault. The Tenth Circuit made that point clear in Hefley v. Textron, Inc., stating in relevant part:

5

> . . . Textron [third-party plaintiff] no longer seeks indemnity or contribution from the immune parties; rather, it requests only that Fry and the United States [third-party defendants] remain parties for the purposes of discovery and assessment of comparative fault. It is well established, however, that impleader is proper only where the third-party defendant's liability is in some way derivative of the outcome of the main claim. Textron does not, and indeed cannot, assert that Fry and the United States may be liable to it if the plaintiffs in the underlying suit are successful. Thus, the attempt to use rule 14(a) impleader requires that we force a conceptual square peg into a procedural round hole. We are unable to do so.

713 F.2d at 1498 (internal quotation and citations omitted); but see Tipton v. Texaco, Inc., 103 N.M. 689, 693, 712 P.2d 1351, 1355 (1985) (liberally interpreting Rule 14 of the New Mexico Rules of Civil Procedure to allow continued impleader of concurrent tortfeasors, whose liability for contribution was abolished after the comparative negligence system was adopted).

Based on the foregoing authorities, Seller's attempt to implead Designer and Manufacturer is not well taken. Whether Seller is attempting to attribute sole liability to them for all or part of Buyer's damages or is attempting to attribute partial liability to them for all or part of Buyer's damages, the point remains that Seller may not use Rule 14 to implead and make a third party complaint against them. Seller's motion should be denied.

### III.
### CONCLUSION

For the reasons set forth above, Defendant's motion to file and serve third party complaints is not well taken. An order in conjunction with this Memorandum Opinion will issue.

DATED at Albuquerque this 17th day of October, 2001.

                                                                             _____
                                                                             BRUCE D. BLACK
                                                                             United States District Judge

**Attorneys:**

For Plaintiff:

    Roger E. Michener, Placitas, N.M.

For Defendant:

    Roger L. Prucino, Santa Fe, N.M.
    Lane Fisher, Philadelphia, Pa.